AO 91 (Rev. 11/82)    **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

FILED - SOUTHERN DIVISION
CLERK U.S. DISTRICT COURT

**APR 3 0 2015**

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| UNITED STATES OF AMERICA<br>v.<br>JI HE | DOCKET NO. |
|---|---|
| | MAGISTRATE'S CASE NO.<br>SA15-240M |

---

Complaint for violation of Title 18 U.S.C. Sections 1505, 1546(a), 401(3).

| NAME OF MAGISTRATE JUDGE<br>HONORABLE DOUGLAS F. McCORMICK | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|

| DATE OF OFFENSE<br>April 13, 2015 | PLACE OF OFFENSE<br>San Bernardino County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Beginning from unknown date to on or about April 13, 2015, in San Bernardino County and elsewhere, within the Central District of California, Ji He, citizen and national of China, last known residence in Rancho Cucamonga, California, violated Title 18, United States Code, Sections 1505, 1546(a), and 401(3), which criminalize, respectively: obstruction of proceedings before department, agencies, and committees; fraud and misuse of visas, permits and other documents; and criminal contempt of court

*LODGED*
2015 APR 30 PM 3:41
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CA.
SANTA ANA

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>**JUAN C. MARQUEZ** |
|---|---|
| | OFFICIAL TITLE<br>SPECIAL AGENT<br>INTERNAL REVENUE SERVICE –<br>CRIMINAL INVESTIGATION |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br><br>**DOUGLAS F. McCORMICK** | DATE<br>4-30-15 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA: C. Pell and S. Leal      REC: Detention

CEP

## AFFIDAVIT

I, Juan C. Marquez, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the Internal Revenue Service ("IRS"), Criminal Investigation ("IRS-CI") and have served in this capacity since March 2002. As part of my training as a Special Agent, I attended the Federal Law Enforcement Training Center in Glynco, Georgia, for approximately five months. There, I received training in criminal and financial investigative techniques with an emphasis in accounting and criminal tax law. My current duties and responsibilities include conducting and participating in criminal investigations of individuals and businesses for violations of Titles 18, 26, and 31 of the United States Code. I have participated in and executed numerous criminal complaints in other investigations of criminal violations of the Internal Revenue Code and related offenses.  My experience includes investigation of tax fraud, money laundering, mail fraud, wire fraud, and various frauds and swindles involving the mails and other means and instrumentalities of interstate commerce.

## II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of an application for a criminal complaint against and an arrest warrant for Jie HE ("HE") for violations of Title 18, United States Code, Sections 1505, 1546(a), and 401(3), which criminalize,

1

respectively: obstruction of proceedings before department, agencies, and committees; fraud and misuse of visas, permits, and other documents; and criminal contempt of court.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

**A. Summary of Investigation**

4. The United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and the United States Department of the Treasury, Internal Revenue Service ("IRS") - Criminal Investigation, are conducting a criminal investigation of Michael Wei Yueh Liu ("Liu") and Jing Dong ("Dong"), and their corporation USA Happy Baby, Inc. ("USA Happy Baby"), related to immigration fraud, tax fraud, and failure to report foreign bank accounts in China and Hong Kong, surrounding the operation of so-called "Chinese maternity houses" in luxury apartments located in San Bernardino County, California.

5.    Based in San Bernardino County, California, Liu and Dong operate a business named USA Happy Baby where they commit immigration fraud by bringing and harboring pregnant Chinese foreign nationals in the United States for the sole purpose of giving birth in the United States to obtain U.S. citizenship, while misrepresenting the true intention of their visit to the United States.   Liu and Dong's business offers the following services to pregnant Chinese nationals: (1) housing in apartments in San Bernardino County the duration of the pregnancy and postnatal care; and (2) transportation for restaurants, shopping, and recreation.

**B.    March 3, 2015: Search Warrants Executed**

6.    On March 3, 2015, HSI and IRS executed 37 federal search warrants throughout Southern California, including a warrant at 7828 Day Creek Boulevard, Unit 422, Rancho Cucamonga, California 91730 (SA 15-130M issued by the Honorable Jay C. Gandhi on March 2, 2015).   (See Attachment A: Search Warrant SA 15-133M and supporting affidavit of HSI SA Eric Blair and incorporated by reference. (The affidavits for the Rancho Cucamonga locations are identical.))   At the time of the execution of the search warrants, HE was discovered to be residing in unit 422.

**C.    Interview of HE during execution of search warrant on March 3, 2015**

7.    On March 3, 2015, HSI SA J. Gutierrez conducted an interview of HE, who had been residing in Apartment Unit 422.   I

reviewed the interview notes and learned that HE provided the following information, in part:

a.    HE was a customer of USA Happy Baby and "Jing Dong;"

b.    The purpose of HE's trip to the United States was for HE to have a baby in the United States;

c.    Prior to coming to the United States, HE had studied for approximately 5 years at the University of London in the United Kingdom;

d.    Dong instructed HE to enter the United States through Las Vegas, even though her intended destination was Los Angeles, because Las Vegas was an easier location through which to enter the United States; and

e.    HE paid Dong approximately $50,000 USD for apartment rental, utilities, food, and transportation for doctors' appointments and shopping.  The money had been wired to Dong's bank account.

**D.    Visa Application by HE**

8.    On or about April 29, 2015, I reviewed HE's application for nonimmigrant visas to enter the United States. Based upon my review of her visa application, I know the following:

9.    On or about October 8, 2014, HE submitted a nonimmigrant visa application (Form DS-160) online to the United States Embassy in Shanghai, China.  In her nonimmigrant visa application, HE provided the following information under penalty of perjury:

4

a.    The purpose of her trip to the United States was for temporary business/pleasure/tourism/medical treatment;

b.    That her intended length of stay in the United States was 20 days;

c.    That she would be staying at the "Hilton Los Angeles Airport" in Los Angeles, California, during her stay in the United States;

d.    That her present employer was "Zhejing Aoer Electrical Appliance Company Ltd," and that she was an accountant earning approximately 6,500 RMB per month;

e.    That no one assisted her in filling out the vias application.

10.    On or about October 14, 2014, HE was issued a nonimmigrant visa from the United States Consulate. I reviewed the consular "memo" from HE's visa interview at the American Embassy in Shanghai and learned that the officer concluded that HE was "going for leisure" to the United States.

**E.    False Statement to Customs and Border Protection ("CBP") at Las Vegas International Airport**

11.    On April 29, 2015, I reviewed entry record for HE and learned the following:

a.    On or about November 12, 2014, HE arrived at the Las Vegas International Airport from China.

b.    HE provided CBP with an address in Las Vegas, Nevada, where she would purportedly be staying, which is a different address than the Los Angeles address that she had provided the State Department when applying for the visa. Both

5

of those addresses differ from the location in Rancho Cucamonga, California, where she was observed on February 23, 2015, and interviewed on March 3, 2015.

**F.   March 6, 2015: Designation as Material Witness in Grand Jury Investigation and Conditions of Release**

12.   On March 6, 2015, the Honorable David T. Bristow, United States Magistrate Judge, granted the government's motion and designated HE as a Material Witnesses for the grand jury investigation involving USA Happy Baby, Inc.

13.   That same day, the Court released Material Witness HE on the following terms and conditions:

     a.   $5,000 appearance bond with affidavit of surety, or posting $5,000 cash;

     b.   Supervision by United States Pretrial Services; and

     c.   Remain in United States until further Order of the Court.

14.   That same day, HE signed the Central District of California Release Order and Bond Form.

15.   On or about March 17, 2015, HE posted $5,000 cash for her bond.

**G.   April 13, 2015: Unauthorized Departure/Flight from the United States in Violation of Court's Release Order**

16.   On April 13, 2015, at approximately 12:30 p.m., without authorization from the Court, HE and her one-month old United States citizen child departed the United States from LAX on China Eastern Airlines 586 to Shanghai, China.

6

## IV. <u>CONCLUSION</u>

17.   For all the reasons described above, including
(1) HE's false travel information on her visa application; and
(2) HE's unauthorized departure from the United States to China
in violation of the Court's Release Order, after she had been
designated a material witness for a federal grand jury
investigation, there is probable cause to believe that HE
violated Title 18, United States Code, Sections 1505, 1546(a),
and 401(3), which criminalize, respectively: obstruction of
proceedings before department, agencies, and committees; fraud
and misuse of visas, permits and other documents; and criminal
contempt of court.


_____

JUAN C. MARQUEZ, Special Agent
INTERNAL REVENUE SERVICE -
CRIMINAL INVESTIGATION


Subscribed to and sworn before me
this ___ day of April 2015.


**DOUGLAS F. McCORMICK**
_____
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE

AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

COPY
UNDER SEAL

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
11210 4th Street, Unit 4301 )
Rancho Cucamonga, California 91730 )
)

Case **SA15-133M**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2

located in the _____ Central _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §1324(a)(1)(A); 18 U.S.C. §§ 371 and 1546; 26 U.S.C. §§ 7201 and 7206; and 31 U.S.C. §§ 5314 and 5322(a) | See attached Affidavit |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Eric Blair, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3.2.2015

Jay C. Gandhi
*Judge's signature*

City and state: Santa Ana, California

Hon. ~~Douglas F. McCormick~~, U.S. Magistrate Judge
*Printed name and title*

AUSA: C. Pell and S. Leal

Jay C. Gandhi

ATTACHMENT A

*(SOUTHERN DIVISION CLERK, U.S. DISTRICT COURT MAR - 2 2015 CENTRAL DISTRICT OF CALIFORNIA BY DEPUTY)*

# Table of Contents

I.    INTRODUCTION ......................................................... 1

II.   PURPOSE OF AFFIDAVIT ............................................. 2

III.  STATEMENT OF PROBABLE CAUSE ................................. 4

      A.   Summary of Investigation ................................ 4

      B.   Overview of B-2 Nonimmigrant Visa ("Tourist
           Visa") and Arrival/Inspection/Admission to the
           United States ........................................... 6

      C.   Background on immigration fraud involving
           pregnant Chinese nationals ............................ 11

      D.   Training and experience in investigations
           involving documents written in foreign languages. ...... 15

      E.   Records from the California Secretary of State ......... 16

      F.   Examples of pregnant Chinese nationals linked
           through surveillance to LIU and DONG's
           immigration fraud scheme ................................ 16

           1.   February 9, 2015: surveillance at the
                Reserves Apartment Complex and ensuing
                traffic stop ....................................... 16

           2.   February 10, 2015: SBSD traffic stop
                identifies additional foreign national
                customers of LIU and DONG's immigration
                fraud scheme, and LIU asserts that he
                operates the business at the Reserves
                Apartment Complex. ................................. 24

           3.   February 20, 2015: additional surveillance
                at the Reserves Apartment Complex. ................ 28

           4.   February 23, 2015: San Bernardino Fire
                Department follows up on fire hazard
                complaints at the Day Creek Complex and
                identifies additional customers of LIU and
                DONG's scheme. ..................................... 29

           5.   February 23, 2015: SBFD follows up on fire
                hazard complaints at the Victoria Arbor
                Complex. ........................................... 33

      G.   February 2015: continued surveillance of LIU
           confirms that LIU operates his immigration fraud
           business out of his house (SUBJECT PREMISES #10) ....... 36

H.   Southern California Gas Company Records . . . . . . . . . . . . . . . 40

    1.   LIU's subscriber information with Southern
       California Gas lists LIU as the CEO of USA
       HAPPY BABY and his mailing address as
       SUBJECT PREMISES #10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    2.   USA HAPPY BABY, with LIU as the point of
       contact, is the subscriber for SUBJECT
       PREMISES #1 and SUBJECT PREMISES #3 through
       SUBJECT PREMISES #9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    3.   LIU is listed as the subscriber for SUBJECT
       PREMISES #2 (Unit # 4301) and SUBJECT
       PREMISES #10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    4.   LIU and DONG are listed as subscribers on
       additional units other than SUBJECT PREMISES
       #1 to SUBJECT PREMISES #10. . . . . . . . . . . . . . . . . . . . 41

I.   Internet advertisements for birthing houses are
   linked to LIU's telephone numbers. . . . . . . . . . . . . . . . . . . 42

J.   Internet advertisements for birthing houses
   linked to DONG and email address
   usahappybaby@hotmail.com. . . . . . . . . . . . . . . . . . . . . . . . . . . 44

K.   LIU and DONG operate their immigration fraud
   scheme in at least nine apartments in Rancho
   Cucamonga, California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

L.   LIU operates his immigration fraud scheme out of
   his residence in Rancho Cucamonga, California
   (SUBJECT PREMISES #10). . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

M.   DONG's bank records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

N.   LIU and DONG's personal tax returns failed to
   report hundreds of thousands of dollars in
   income. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

O.   USA HAPPY BABY INC.'s corporate tax returns
   appear to report unreasonable losses that make
   the company facially appear to have no taxable
   income. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

P.   LIU failed to report foreign bank accounts to the
   IRS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Q.   Use of cash to further fraudulent activities . . . . . . . . . . . 57

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## Premises Index

| PREMISES | Address | PAGES |
|---|---|---|
| A-1 | 11210 4th St, Unit 1220, Rancho Cucamonga, California 91730 | 3, 28, 40, 47 |
| A-2 | 11210 4th St, Unit 4301, Rancho Cucamonga, California 91730 | 3, 17, 20, 25, 26, 27, 40, 41, 48 |
| A-3 | 11210 4th St, Unit 5216, Rancho Cucamonga, California 91730 | 3, 28, 40, 48 |
| A-4 | 11210 4th St, Unit 6210, Rancho Cucamonga, California 91730 | 3, 17, 18, 40, 49 |
| A-5 | 11210 4th St, Unit 7214, Rancho Cucamonga, California 91730 | 3, 18, 40, 49 |
| A-6 | 11210 4th St, Unit 7316, Rancho Cucamonga, California 91730 | 3, 17, 40, 50 |
| A-7 | 7922 Day Creek Blvd, Unit 4214, Rancho Cucamonga, California 91739 | 3, 33, 39, 40, 50 |
| A-8 | 7922 Day Creek Blvd, Unit 6214, Rancho Cucamonga, California 91739 | 3, 24, 33, 35, 39, 40, 51 |
| A-9 | 7828 Day Creek Blvd, Unit 422, Rancho Cucamonga, California 91739 | 3, 24, 29, 31, 32, 40, 44, 51 |
| A-10 | 12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, California 91739 | 3, 4, 36, 37, 38, 39, 40, 41, 52, 53, 54, 55 |

iii

# AFFIDAVIT

I, Eric Blair, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") with United States Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security ("DHS"), formerly the United States Immigration and Naturalization Service ("INS").  I have been so employed since March 2003, after ICE was created during the organization of DHS.  I am currently assigned to the human smuggling-human trafficking unit of ICE's Homeland Security Investigations, Riverside-San Bernardino (HSI/RV-SB) office located in San Bernardino, California.  Prior to my employment with ICE, I enforced immigration laws with INS since September 8, 1986.  Among my current responsibilities is the enforcement of federal criminal statutes involving violations of the Immigration and Nationality Act ("INA") in the Central District of California.  I have successfully completed the United States Border Patrol Academy, located in Glynco, Georgia, as well as specialized training related to violations of the INA.  I have received extensive training in the investigation of immigration violations and I have participated in numerous arrests, interviews, and investigations of persons who have violated the

1

immigration laws of the United States. I have gained knowledge of INA violation investigations through my discussions with other special agents who have personally conducted investigations of immigration violations. In addition, I have personally conducted or assisted in investigations of alien and narcotics smuggling organizations, worksite enforcement, immigration fraud, immigration status violators, and human rights violators/war criminals.

## II.   PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of applications for warrants to search for evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A); Title 18, United States Code, Sections 371 and 1546; Title 26, United States Code, Sections 7201 and 7206; and Title 31, United States Code, Sections 5314 and 5322(a), which criminalize, respectively: bringing in and harboring aliens; conspiracy and fraud and misuse of visas, permits, and other documents; tax evasion and false tax return; and willful failure to file report of foreign bank and financial accounts ("FBAR").

3.   The locations to be searched are:

a.   Units 1220, 4301, 5216, 6210, 7214, and 7316, within an apartment building located at 11210 4th St, Rancho Cucamonga, California 91730 ("Reserves Apartment Complex"), which locations are more fully described in Attachments A-1 through A-6, respectively:

2

      i.    SUBJECT PREMISES #1 (Unit #1220);

      ii.   SUBJECT PREMISES #2 (Unit #4301);

      iii. SUBJECT PREMISES #3 (Unit #5216);

      iv.  SUBJECT PREMISES #4 (Unit #6210);

      v.   SUBJECT PREMISES #5 (Unit #7214); and

      vi.  SUBJECT PREMISES #6 (Unit #7316);

    b.   Units 4214 and 6214 within an apartment building located at 7922 Day Creek Blvd, Rancho Cucamonga, California 91739 ("the Victoria Arbors Complex"), which locations are more fully described in Attachments A-7 and A-8, respectively:

      i.   SUBJECT PREMISES #7 (Unit #4214);

      ii.  SUBJECT PREMISES #8 (Unit #6214);

    c.   7828 Day Creek Blvd, Unit 422, Rancho Cucamonga, California 91739 (SUBJECT PREMISES #9 (Unit #422)), described more fully in Attachment A-9, which is located in the "Day Creek Apartment Complex;" and

    d.   12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, California 91739 (SUBJECT PREMISES #10), described more fully in Attachment A-10.

    4.   Based on my training and experience, and the facts set forth in this affidavit, I believe the locations described in Attachments A-1 through A-9 are where evidence, contraband, fruits, or instrumentalities of bringing in and harboring aliens; conspiracy and fraud and misuse of visas, permits, and other documents; tax evasion, and false tax return; and willful

3

failure to file report of foreign bank and financial accounts, as specified further in Attachment B, will be found.

     5.   Based on my training and experience, and the facts set forth in this affidavit, I believe the location described in Attachment A-10 is where evidence, contraband, fruits, or instrumentalities of bringing in and harboring aliens; conspiracy and fraud and misuse of visas, permits, and other documents; tax evasion, and false tax return; and willful failure to file report of foreign bank and financial accounts, as specified further in Attachment C, will be found.

     6.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.  STATEMENT OF PROBABLE CAUSE

**A.**   **Summary of Investigation**

     7.   The United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and the United States Department of the Treasury, Internal Revenue Service ("IRS"), are conducting a criminal investigation of Michael Wei Yueh LIU ("LIU") and Jing DONG ("DONG"), and their

corporation USA HAPPY BABY, INC. ("USA HAPPY BABY"), related to immigration fraud and tax fraud, surrounding the operation of so-called "Chinese birthing houses" in apartments located in San Bernardino County, California.

8.   **Immigration Fraud**: Based in San Bernardino County, California, LIU and DONG operate a business named USA HAPPY BABY where they commit immigration fraud by bringing and harboring pregnant Chinese foreign nationals in the United States for the sole purpose of giving birth in the United States to obtain U.S. citizenship, while misrepresenting the true intention of their visit to the United States.  LIU and DONG's business offers the following services to pregnant Chinese nationals: (1) housing in apartments in San Bernardino County the duration of the pregnancy and postnatal care; and (2) transportation for restaurants, shopping, and recreation.

9.   **Tax Fraud**: LIU and DONG earn hundreds of thousands of dollars in income from their immigration fraud scheme, which they failed to accurately report to the IRS by filing false tax returns.

10.   **Failure to report foreign bank accounts**: In 2013 and 2014, LIU received hundreds of thousands of dollars in wire transfers from China.  For example, during a two-month period from late November 2013 to late January 2014, LIU received approximately $180,000 in wire transfers from bank accounts in China into his personal bank account in the United States. Neither LIU and DONG has ever reported to IRS the existence of

any foreign bank accounts, even though federal law requires such reporting by June 30 every year.

11.    **Chinese government customers**: Several of the customers of LUI and DONG's immigration fraud scheme have been identified as being employed by the Chinese government, including in the provinces of Ningxia and Henan, China.

B.    **Overview of B-2 Nonimmigrant Visa ("Tourist Visa") and Arrival/Inspection/Admission to the United States**

12.    Generally, a citizen of a foreign country who wishes to enter the United States must first obtain a visa, either a nonimmigrant visa for temporary stay, or an immigrant visa for permanent residence.  Visitor visas are nonimmigrant visas for persons who want to enter the United States temporarily for business (visa category B-1), tourism, pleasure or visiting (visa category B-2), or a combination of both purposes (B-1/B-2).

13.    In order to apply for a tourist visa, an applicant must complete and submit a Form DS-160, Nonimmigrant Visa Application, and schedule an appointment for a visa interview. Generally, the visa interview takes place at the U.S. Embassy or Consulate in the country where the applicant resides.

14.    Based on my training and experience, I know that visas are a privilege, not a right.  In order to be granted a non-immigrant visa, applicants must overcome the presumption in Section 214b of the Immigration and Nationality Act ("INA") that all visa applicants are intending immigrants.  Generally, an

applicant can overcome this presumption by providing evidence that he/she has strong ties to a residence abroad (e.g., employment, assets, or family ties) that he/she has no intention of abandoning.

15.   Additional documentation may be required or requested to establish whether an applicant is qualified.   For example, additional requested documents may include evidence of:

        a.    the purpose of the applicant's trip;

        b.    the applicant's intent to depart the United States after his/her trip; and/or

        c.    the applicant's ability to pay all costs of the trip.

16.   Generally, an applicant will be required to provide evidence of employment and/or family ties in order to support the purpose of the applicant's trip and the applicant's intent to return to his/her home country.

17.   In order to be granted a nonimmigrant visa, an applicant must also establish that, at the time of application for a visa and application for admission, that he/she is not likely to become a "public charge." (See INA §§ 212(a)(4)(A), (B)).   In determining whether an alien is inadmissible as a "public charge," the consular officer considers the alien's age, health, family status, assets, resources, financial status, and education.

18.   Based on my training and experience, I know that medical services in the United States are rather expensive when compared to other countries.   As explained above, United States

laws prohibits the issuance of a nonimmigrant visa to anyone who is likely to become a "public charge," including individuals who might require medical care at the expense of federal, state, or local government agencies in the United States.  In order to qualify for a nonimmigrant visa to seek medical care in the United States, an applicant will generally need to present certain information during the interview at the Consulate to show that he/she will not be treated at the expense of a governmental entity in the United States.  The applicant will also need to show that he or she is otherwise eligible for the visa.

a.    The Customs and Border Protection ("CBP") website in relevant part provides that for visitors to the United States who are pregnant: "When determining if you will be allowed to enter the U.S., CBP Officers take into consideration the date your child is due for delivery and the length of time you intend to stay in the U.S. In addition, they want evidence that you have sufficient medical insurance to cover any medical necessities while you are in the U.S. and that you intend to return home. If it is determined that you do not have sufficient medical insurance to cover any unexpected or expected medical care while in the U.S., you can be denied entry."

19.   In order to establish eligibility for a nonimmigrant visa where an applicant intends to seek medical treatment in the United States, an applicant may be required to provide evidence of:

8

a.    commitment by the applicant or a family member to pay for the treatment, as well as the ability to pay for the treatment;

b.    sufficient income and/or other financial resources to enable the applicant or sponsor to pay for the treatment;

c.    a show of significant resources, controlled by the applicant, which are sufficient for use in meeting expenses,

d.    a letter from the treating institution, indicating that all expenses of treatment in the United States will be covered by the institution itself; and

e.    the financial evidence presented should also cover living arrangements for any accompanying family members (where will they stay, for how long, at what cost, and who will pay).

20.  In order to travel to the United States on a nonimmigrant visa, a foreign national will be subject to arrival inspections by CBP and either be admitted or denied entry into the United States.  Although there are no specific regulations prohibiting pregnant foreign nationals from entering the United States, entry is allowed or denied at the discretion of the admitting CBP officer. If the CBP officer determines that a foreign national is likely to become a ward of the government or "public charge" (meaning that the government must provide medical care because the foreign national does not have medical coverage), the foreign national can be denied entry.  When determining if a foreign national will be allowed to enter the

9

United States, CBP officers take into consideration the
following:

        a.    the date a foreign national's child is due for
delivery;

        b.    the length of time a foreign national intends to
stay in the United States;

        c.    whether the foreign national has sufficient
medical insurance to cover any medical necessities while in the
United States including any unexpected or expected medical care;

        d.    whether the foreign national has sufficient
financial resources to fund the foreign national's purpose of
stay in the United States; and

        e.    whether he/she intends to return to the country
of origin.

    21.  In evaluating whether a foreign national is eligible
for admission to the United States on a visa that has been
issued, CBP will consider a variety of factors, including the
truthfulness of the applicant's statements at time of admission
as well as the statements provided in the visa application and
entry documentation (i.e., CBP Form 6059B: Customs Declaration
Form). If it is determined that a foreign national does not
have sufficient medical insurance or financial ability to cover
any unexpected or expected medical care while in the United
States, that applicant can be denied entry into the United
States.

10

C.   **Background on immigration fraud involving pregnant Chinese nationals**

22.   Based on my training, experience, and participation in this investigation, I am aware of a common scheme in which businesses based in the United States and China solicit the business of pregnant Chinese foreign nationals who wish to come to the United States to give birth.   This type of business is generally referred to in the Chinese community as a "confinement center" and in the American media as "birthing houses" or "maternity hotels."

23.   For the past several years, thousands of pregnant women from China have been traveling to the United States using temporary visitor visas for the sole purpose of giving birth in the United States so that their children will enjoy the benefits of natural-born American citizens.   According to a recent *CNN-Money* article entitled "Why Chinese Moms want American babies," a "booming birth tourism industry has sprouted from coast to coast to cater to growing interest -- in 2012, about 10,000 Chinese women gave birth in the U.S., more than double the 4,200 in 2008, according to Chinese state media."[1]   A 2015 law review article noted that one source "estimates that, of the more than 300,000 children born to foreign citizens in the United States every year, 40,000 are to birth tourists—foreign individuals

--------------------------------------------

[1] Yan, Sophia, "Why Chinese Moms want American babies," CNN Money (Feb. 8, 2015), *available at* http://money.cnn.com/2015/02/08/news/china-birth-tourism/index.html   (hereinafter "CNN-Money").

legally in the United States with a travel visa."[2]   The reasons
for wanting to have birth in the United States include:

- "Many of the families want an American kid because a
  foreign passport could be the family's ticket out of China
  if they grow weary of pollution or food safety scares;"[3]

- United States "superior education resources" and "clean
  environment;"[4]

- United States "free public schools and low-interest
  loans;"[5] and

- "The whole family may eventually get in on the act, since
  parents may be able to piggyback on the child's citizenship
  and apply for a green card when the child turns 21."[6]

In most cases, those coming to the United States from China to
give birth are wealthy: "[t]he desire to leave China is
especially pronounced among the wealthy. Almost two-thirds of
Chinese with more than 10 million yuan ($1.6 million) in the
bank have emigrated, or are planning to, according to a *Hurun*

_____

[2] Grant, Tyler, "Made in America: Medical Tourism and Birth
Tourism Leading to a Larger Base of Transient Citizenship," 22
VA. J. SOC. POL. & LAW 159 (2015).

[3] CNN-Money.

[4] Lu, Rachel, "Look Who's Walking: Chinese Birth Tourism
Goes Stateside," Foreign Policy (April 25, 2014), *available at*
http://foreignpolicy.com/2014/04/25/look-whos-walking-chinese-
birth-tourism-goes-stateside/.

[5] Chang, Cindy, "In suburbs of L.A., a cottage industry of
birth tourism – Companies operating 'maternity hotels' cater to
pregnant women from Chinese-speaking nations who want an
American-citizen newborn," LA Times (Jan. 3, 2013), *available at*
http://articles.latimes.com/2013/jan/03/local/la-me-birthing-
centers-20130104   (hereinafter "LA Times").

[6] LA Times.

report released last year."[7]   Moreover, according to a recent *New York Times* article entitled "Wary of Future, Professionals Leave China in Record Numbers," middle-class Chinese "don't feel secure for their future and especially for their children's future" because "[t]hey don't think the political situation is stable."[8]   Perpetrators of visa fraud schemes typically charge $40,000 to $60,000, which is a fee able to be paid by the wealthy in China.

24.   Based on my training, experience, and participation in this investigation, the scheme begins in China where the pregnant foreign national is assisted in obtaining a nonimmigrant visa for pleasure ("tourist visa") by misrepresenting their true intentions for travelling to the United States.   Generally, the foreign nationals will be assisted by the "birthing house operators" or associated "travel agencies" in China in filing a nonimmigrant visa application indicating their intention to travel to the United States for a short vacation period, often to a tourist attraction in the United States.   However, in truth and fact, the foreign national has arranged and/or prepaid to travel and reside in a "birthing house" for three to four months in order to give birth to a United States citizen child (based on birth on United States soil).

---

[7] CNN-Money.

[8] Johnson, Ian, "Wary of Future, Professionals Leave China in Record Numbers," <u>N.Y. Times</u> (Oct. 31, 2012), *available at* <u>http://www.nytimes.com/2012/11/01/world/asia/wary-of-future-many-professionals-leave-china.html</u>

25.  Based on my training, experience, and participation in this investigation, birthing houses will generally advise foreign national clients to fly to tourism points of entry such as Hawaii or Las Vegas and to avoid travelling directly to Los Angeles International Airport ("LAX").  This advice is due to heightened scrutiny by CBP officials at LAX based on the volume of fraudulent visas and false statements in entry documents that CBP officials have experienced over the last decade related to birth tourism.

26.  Based on my participation in this investigation, I have reviewed numerous advertisements for "birthing houses" on the internet or in newspapers describing the benefits of having a child born in the United States including a United States passport and social security for the United States citizen child, access to United States educational institutions, health care, and the ability to assist parents and family members to immigrate to the United States.

27.  Based on my training, experience, and participation in this investigation, I know that "birthing houses" also provide pregnant foreign nationals with housing, transportation, and medical care/child birth arrangements for the duration of their stay in the United States.  Based on my training, experience, and participation in this investigation, I know that "birthing houses" generally provide contracts for their services.  These "birthing houses" businesses operate for profit and typically charge between $15,000 to $50,000 per person depending on the type of packages selected.

14

**D.    Training and experience in investigations involving documents written in foreign languages.**

28.   I have conducted and participated in, and discussed with other agents who have conducted, investigations involving individuals who spoke a language other than English, including Spanish and Chinese.

29.   Based upon my knowledge and experience, I know that individuals who share a native language other than English will often communicate in their native language.  This communication can include written notes and correspondence.

30.   During this investigation, as discussed below, IRS SA Marquez discovered multiple documents written in Chinese.  For example, IRS SA Marquez examined advertisements or blogs on the internet by LIU and DONG regarding USA HAPPY BABY, which were in the Chinese written language.  Also as discussed below, IRS SA Marquez also told me that he observed in LIU's vehicle multiple documents written in Chinese, including what appeared to be receipts.

31.   Based on such experience, I know that often, documents are written in the foreign language, and that when searches are conducted of locations involved in such investigations, it is difficult for the searching agents (who generally read only English) to determine whether a particular document is covered by the items to be seized from the search warrant if the document is written in a foreign language.

32.   Thus, additional time is usually needed after seizing all the documents written in the foreign language so that a

15

qualified individual who can read the foreign language can determine whether the foreign language documents are covered by the terms of the search warrant.

**E.   Records from the California Secretary of State**

33.   IRS SA Marquez informed me that on or about February 11, 2015, he conducted a search of the records maintained with the California Secretary of State for any corporations/entities affiliated with LIU.  From this search, he discovered that LIU was associated with USA HAPPY BABY INC., with listed address on Pritchard Way in Hacienda Heights, California. According to IRS SA Marquez, that same address was LIU and DONG's former residence.

**F.   Examples of pregnant Chinese nationals linked through surveillance to LIU and DONG's immigration fraud scheme**

1.   **February 9, 2015: surveillance at the Reserves Apartment Complex and ensuing traffic stop**

34.   On February 9, 2015, IRS Special Agent J. Benson conducted surveillance on the Reserves Apartment Complex, located at 11210 4th St, Rancho Cucamonga, California 91730, to identify apartments and individuals connected to USA HAPPY BABY, IRS SA Benson observed the following:

a.   At approximately 8:40 a.m., IRS SA Benson observed an Asian woman wearing pajamas walking from the direction of building seven towards building six.  Near building six, an unknown Caucasian male asked her if she was having a boy or a girl, but her response was not heard.  The woman appeared

to be pregnant and near full term.  The pregnant female continued into building six, up one flight of stairs to apartment 6210 (SUBJECT PREMISES #4 (Unit #6210)), produced a key, unlocked the door, quickly entered, and relocked the door behind her.

b.   At approximately 8:50 a.m., IRS SA Benson observed a pregnant Asian woman shaking a rug over the third floor balcony on the southeast corner of building seven. According to the Reserves Apartment Complex site plan, this apartment appears to be number 7316 (SUBJECT PREMISES #6 (Unit #7316)).

c.   At approximately 9:32 a.m., IRS SA Benson observed an Asian male on the third floor balcony on the southwest corner of building four.  According to the Reserves Apartment Complex site plan, this apartment is number 4301 (SUBJECT PREMISES #2 (Unit #4301)).

d.   At approximately 9:45 a.m., IRS SA Benson observed two pregnant Asian women and one Asian male leaving building four from the stair case on the southwest corner, and proceeding south out the south gate.

e.   At approximately 9:55 a.m., IRS SA Benson observed the pregnant female that previously had entered apartment 6210 (SUBJECT PREMISES #4 (Unit #6210)) then meeting with another Asian woman that did not appear to be pregnant near the dumpster between the east corner of building six and the northwest corner of building five.  The pregnant female walked

17

back towards building six, and the other continued north past
building seven.

     f.  At approximately 10:31 a.m., IRS SA Benson
observed an Asian male and a pregnant Asian woman exiting a
white Toyota van with dark tinted windows, license number
7FPP879.  They stood by the pool and were joined by another
Asian man and pregnant Asian woman.  It appeared that they were
waiting for a ride because they often looked towards the north
and south gates while facing the curb.  At approximately 10:43
a.m., the woman and male were observed going up the southeast
stairs to the second floor of building seven.  They turned right
immediately off the stairs and entered the apartment.  From the
Reserves Apartment Complex site plan, this apartment appears to
be number 7214 (SUBJECT PREMISES #5 (Unit #7214)).  The other
couple walked north past building eight on the sidewalk out of
view.

     g.  At approximately 11:00 a.m., IRS SA Benson
observed four Asian women walking south along the street that
traverses north/south through the Reserves Apartment Complex.
One was the pregnant woman seen entering apartment 6210 (SUBJECT
PREMISES #4 (Unit #6210)) earlier.  Two other women appeared to
be pregnant, and third did not appear pregnant.  The group
stopped and waited on the stone benches just outside the south
gate.  The woman that did not appear pregnant made multiple
phone calls over the next several minutes.  At approximately
11:26 a.m., the woman on the phone waved across the parking lot
to an Asian man in the 7-11 parking lot.  The man waved back,

got into a white van, and parked in front of the dentist's office next to the stone benches. The four women loaded into the van, and after a few minutes, the van backed out of the parking space and proceeded to turn right onto southbound Milliken Ave. The van made a U-turn at the intersection of 4th and Milliken Ave. to proceed northbound on Milliken Ave. San Bernardino County Sheriff's Department (SBSD) Deputy Delgado then initiated a traffic stop on the van.

35.   SBSD Deputy Delgado informed me that he stopped the van after noticing that a taillight was not operational. SBSD Deputy Delgado then identified the driver as Wei Wang and three female passengers, who were identified as Yuan Liu, Bo Zhou, and Eryun Zhang. Wei Wang provided his California Driver's License number XXXX4080, Yuan Liu provided Chinese Passport number XXXXX1124, Bo Zhou provided Chinese Passport number XXXXX8103, and Eryun Zhang provided Chinese Passport number XXXXX7088. Deputy Delgado informed me that he noticed that at least two of the female passengers were pregnant.

a.   Yuan Liu: I reviewed the DS-160 nonimmigrant visa application for Yuan Liu and discovered the following:

i.   On November 11, 2014, Yuan Liu applied for a visa to visit the United States;

ii.   On that application, Yuan Liu indicated that her intended date of arrival was December 20, 2014, and that the purpose of her trip to the United States was "Business/Tourism (B1/B2)";

19

iii. Yuan Liu indicated that she intended to stay in the United States for 15 days at 2005 Kalia Road, Honolulu, Hawaii 96815 (the "Hilton Hawaiian Village Waikiki");

iv.   Under the current employment section, Yuan Liu listed her primary occupation as "Government" and her position as "Deputy Director" of the "Henan Peoples Radio Station;"

v.   I reviewed the consular "memo" from Yuan Liu's visa interview conducted at the American Embassy in Beijing and learned that the officer concluded that Yuan Liu would be participating in a two-week group travel to the United States.

vi.   The U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Yuan Liu indicated that she arrived in Honolulu, Hawaii, on January 29, 2015, as a temporary visitor.  Yuan Liu provided CBP with an address in Honolulu, Hawaii, where she would purportedly be staying, which is a different address than where Yuan Liu was observed and identified at the Reserves Apartment Complex (as discussed below, the following day, 02/10/2015, Yuan Liu was observed inside unit #4301 of the Reserves Apartment Complex (SUBJECT PREMISES #2 (Unit #4301))).

b.   Bo Zhou: I reviewed the DS-160 nonimmigrant visa application for Bo Zhou and discovered the following:

i.   On November 10, 2014, Bo Zhou applied for a visa to visit the United States;

         ii.    On that application, Bo Zhou indicated that the purpose of her trip to the United States was "Business/Tourism (B1/B2)";

         iii. Bo Zhou indicated that her intended date of arrival in the United States would be December 20, 2014;

         iv.    Bo Zhou indicated that she intended to stay in the United States for 8 days at 222 W. Houston Ave, Fullerton, California 92832 (the "Howard Johnson Fullerton – LAX").

         v.    I reviewed the consular "memo" from Bo Zhou's visa interview at the American Embassy in Shanghai and learned that the officer concluded that Bo Zhou was traveling for leisure in the United States.

         vi.    The U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Bo Zhou indicated that she arrived in Honolulu, Hawaii, on January 16, 2015, as a Temporary Visitor for Pleasure (B2). Bo Zhou provided CBP with an address in Honolulu, Hawaii, where she would purportedly be staying, which is a different address than that Bo Zhou provided to the State Department when applying for the visa, which was an address in Fullerton, California. Then, on February 9, 2015, Bo Zhou was seen and identified at the Reserves Apartment Complex.

         c.    Eryun Zhang: I reviewed the DS-160 nonimmigrant visa application for Eryun Zhang and discovered the following:

i.   On October 28, 2014, Eryun Zhang applied for a visa to travel to the United States.

ii.   On that application, Eryun Zhang indicated that the purpose of her trip to the United States was "Business/Tourism (B1/B2)";

iii.  Eryun Zhang indicated that she had specific travel plans: she intended to arrive in the United Stated on December 15, 2014, at Honolulu, Hawaii, and depart on December 30, 2014, from San Francisco, California.  Eryun Zhang indicated that she would be staying at 2375 Ala Wai Blvd, Honolulu, Hawaii 96815.

iv.   Eryun Zhang listed her employment as homemaker.

v.    I reviewed the consular "memo" from Eryun Zhang's visa interview at the American Embassy in Shanghai and learned that the officer concluded that Eryun Zhang was traveling to the United States for her "honeymoon."

vi.   The U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Eryun Zhang indicated that Eryun Zhang arrived in Honolulu, Hawaii, on December 24, 2014, as a Temporary Visitor for Pleasure (B2).  Eryun Zhang provided CBP with an address in Honolulu, Hawaii, where she would purportedly be staying, which is a different address than that Eryun Zhang had provided to the State Department.  Then, on February 9, 2015, Eryun Zhang was seen and identified at the Reserves Apartment Complex in Rancho Cucamonga, California.

22

36.   Based on my training and experience, and conversations with other investigators who have conducted similar investigations, I believe that there is a flight pattern for those wishing to come to the United States to give birth that is indicative of a visa fraud scheme.  I have noted that on numerous occasions, pregnant individuals flying into the United States from China and destined to Los Angeles, often times accompanied by their husbands, will enter the United States via Hawaii, Las Vegas, or a stopover in countries such as Korea, rather than flying directly to LAX.  The ultimate destination of these individuals from my own investigation has been the birthing house at one of the apartments leased by LIU or DONG or in the name of USA HAPPY BABY. As listed above, those apartment complexes linked to USA HAPPY BABY, the Reserves Apartments Complex, the Victoria Arbors Complex, and the Day Creek Complex, are all located in Rancho Cucamonga, California. Normally in this type of investigations these same individuals will return, with their newborn, on direct flights to·China.  There is no reason why these same individuals, when pregnant, could not have flown directly into LAX, except I believe that they are attempting to evade perceived heightened detection at LAX.  From my training and experience, as well as discussions with other experienced HSI and CBP officers, I know that customs at LAX is perceived as more strict at detecting pregnant foreigners than other ports of entry.  Once those individuals who are attempting to evade detection give birth to a child in the United States, they are no longer concerned about detection because they have

23

accomplished their intended objective, i.e., to have a child that is a United States citizen.  Thus, they then return to China via a direct return flight from LAX.

       2.    **February 10, 2015: SBSD traffic stop identifies additional foreign national customers of LIU and DONG's immigration fraud scheme, and LIU asserts that he operates the business at the Reserves Apartment Complex.**

37.    On February 10, 2015, I along with HSI Group Supervisor Salacup (GS Salacup) and HSI Special Agent Ober, conducted surveillance at the Day Creek Complex and the Victoria Arbors Complex located at 7922 and 7828 Day Creek Blvd, Rancho Cucamonga, California 91739, respectively, to identify additional apartments and individuals connected to USA HAPPY BABY.  During that surveillance, the following occurred:

       a.    At approximately 8:30 a.m., I observed a silver Nissan, which matched the description of a vehicle belonging to DONG, make a U-turn on the Day Creek complexes' south road that is to the south of building 300. It then headed for the complexes' main entrance/exit and was seen by HSI SA Ober who began to follow it.

       b.    HSI SA Ober told me that the vehicle's plate was California XXXX8T1. SBSD Deputy Sousa informed me that he then conducted a traffic stop of that vehicle in the area of Milliken Ave., south of Foothill Boulevard, in Rancho Cucamonga, California, because the driver was unable to maintain a single lane.

       c.    SBSD Deputy Sousa informed me that he activated his lights and siren attempting to stop the vehicle. The driver

looked at him several times through the side mirror, but did not stop for approximately 1.5 miles. The driver finally yielded at 9650 Milliken Avenue.

d.   SBSD Deputy Sousa informed me that he contacted the driver but had a difficult time identifying who he was due to the driver's not possessing any form of identification. The driver told SBSD Deputy Sousa that the driver lived at the Reserves Apartment Complex in apartment #4301 (SUBJECT PREMISES #2 (Unit #4301)) and would be willing to get his passport from inside.

e.   SBSD Deputy Sousa informed me that he drove the driver to the Reserves Apartment Complex and followed him upstairs and inside apartment number 4301 (SUBJECT PREMISES #2 (Unit #4301)). SBSD Deputy Sousa informed me that inside the kitchen of that unit, were three Asian females and one Asian male. The driver walked to the back bedroom and handed SBSD Deputy Sousa a Chinese passport. That passport identified the driver as Haun Wang with a date of birth of XX/XX/1988. Two of the females and the male inside the residence also provided their Chinese passports and were identified. Deputy Sousa informed me that one of the females did not provide a form of identification.

f.   SBSD Deputy Sousa informed me that Wang was issued a citation for violation of CVC 12500(A) - driving with no California Driver's License. SBSD Deputy Sousa informed me that as he was towing the vehicle, an Asian male identified by his California Driver's License as "Michael Wei Yueh LIU" (LIU),

25

with a date of birth of XX/XX/1965 approached him.  LIU introduced himself to SBSD Deputy Sousa and told SBSD Deputy Sousa that he was Wang's "uncle."  LIU also told SBSD Deputy Sousa the car belongs to LIU and his wife DONG.  LIU told SBSD Deputy Sousa that LIU uses the vehicle to do deliveries for his business. LIU specified that his business helps Chinese citizens stay in the United States for short-term and long-term visits. LIU told SBSD Deputy Sousa that he helps the Chinese citizens get apartments and assists them with paperwork and establishing legal residency during their stay.  LIU also told SBSD Deputy Sousa that he was a mortgage broker.

      g.  SBSD Deputy Sousa informed me that the following individuals were identified in apartment number 4301 of the Reserves Apartment Complex (SUBJECT PREMISES #2 (Unit #4301)): Haun Wang (the driver), Yuan Liu, Bo Zhou, and Feng Che, and provided Chinese Passports as a form of identification.

      i.  Haun Wang provided Chinese Passport number XXXX5379, Yuan Liu provided Chinese Passport number XXXX1124, Bo Zhou provided Chinese Passport number XXXX8103, and Feng Che provided Chinese Passport number XXXX5258.

      ii.  SBSD Deputy Sousa informed me that the two of the females in that apartment (SUBJECT PREMISES #2 (Unit #4301)) appeared to be pregnant.

      iii. Yuan Liu: this is the same female identified from the SBSD traffic stop from the day before, February 9, 2014.

iv.   <u>Bo Zhou</u>: this is the same female identified from the SBSD traffic stop from the day before, February 9, 2014.

v.   <u>Feng Che</u>: I reviewed the DS-160 nonimmigrant visa application for Feng Che and discovered the following:

(I)   On May 18, 2014, Feng Che applied for a visa to travel to the United States;

(II) On that application, Feng Che indicated that the purpose of his trip to the United States was "Tourism/Medical Treatment (B2)";

(III)      Feng Che indicated that he had specific travel plans: he intended to arrive in the United Stated on May 28, 2014, at New York, New York, and depart on June 10, 2014, from New York, New York. Feng Che indicated that he would be staying at a hotel in New York.

(IV) His application indicated that he would "travel and watch the WWE games."

(V)   I reviewed the consular "memo" from Feng Che's visa interview at the American Embassy in Beijing and learned that the officer concluded that Feng Che was traveling to attend a WWE wrestling match in Chicago.

(VI) As with the other US HAPPY BABY customers who were identified, Feng Che provided the State Department with an address that he would purportedly be staying (in New York), which is a different address than where Feng Che was seen and identified (SUBJECT PREMISES #2 (Unit #4301)).

27

3.   **February 20, 2015: additional surveillance at the Reserves Apartment Complex.**

38.   On February 20, 2015, HSI SAs Korban, Dominguez and Shelton conducted surveillance at the Reserves Apartment Complex, to continue to identify additional apartments and individuals connected to USA HAPPY BABY.  Based upon that surveillance, I was informed of the following:

a.   At approximately 11:25 a.m., HSI SA Korban observed three Asian individuals walking in the shopping area adjacent to the Reserves Apartment Complex. They appeared to be a family, with a mother in her mid-thirties who appeared to be pregnant due to her visibly distended stomach, an adult male approximately 30 years old, and a female child, approximately 4 years old.  SA Korban followed them on foot and observed them enter apartment number 1220 (SUBJECT PREMISES #1 (Unit #1220)).

b.   At approximately 12:15 p.m., HSI SA Korban observed an approximately 30-year-old Asian female wearing white flannel pajamas, who appeared pregnant due to her visibly distended stomach, walk out of building five of the Reserves Apartment Complex. She approached an older Asian female, had a brief conversation with her and then returned to building five. HSI SA Korban then observed her enter apartment 5216 (SUBJECT PREMISES #3 (Unit #5216)).

4.   **February 23, 2015: San Bernardino Fire Department follows up on fire hazard complaints at the Day Creek Complex and identifies additional customers of LIU and DONG's scheme.**

39.   On February 23, 2015, beginning at 1:25 p.m., San Bernardino Fire Department (SBFD) Officer Shane Adams, SBSD Deputy Sousa, HSI Group Supervisor L. Owen, and I knocked on apartments at the Day Creek Complex, to follow up on fire hazard complaints.

40.   At approximately 1:25 p.m. SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of apartment 422 at the Day Creek Complex (SUBJECT PREMISES #9 (Unit #422)), which was opened by an Asian woman later identified as Guqin Qian. Due to her limited English-speaking ability, SBSD Deputy referred her to HSI GS Owen, who is fluent in Mandarin. GS Owen interpreted for SBFD Officer Adams who stated that he was there to clear up a complaint concerning cooking on the balcony. Guqin Qian exited the apartment and spoke to GS Owen, who was outside apartment 422 (SUBJECT PREMISES #9 (Unit #422)) with me. SBSD Deputy Sousa requested identification, and Guqin Qian provided Chinese passport number XXXXX6450 with a date of birth of XX/XX/1962. The following individuals were also in apartment 422 and provided their Chinese passports to SBSD Deputy Sousa: Guoquin He, Chinese passport number XXXXX3575 with a date of birth of XX/XX/1962, and Jie He, Chinese passport number XXXXX5998 with a date of birth of XX/XX/1986.

29

41.   I reviewed the DS-160 nonimmigrant visa application for Guqin Qian and discovered the following:

a.   On October 13, 2014, Guqin Qian applied for a visa to travel to the United States;

b.   On that application, Guqin Qian indicated that the purpose of her trip to the United States was "Tourism/Medical Treatment (B2);"

c.   Guqin Qian indicated that her intended date of arrival was December 20, 2014, and that she intended to stay in the United States for 20 days at 5711 West Century Blvd., Los Angeles, California 90045.

d.   Guqin Qian listed her employment as the Finance Manager for Zhejing Aoer Electrical Appliance Co LTD.

e.   I reviewed the consular "memo" from Guqin Qian's visa interview at the American Embassy in Shanghai and learned that the officer concluded that Guqin Qian was "going for leisure" to the United States.

f.   U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Guqin Qian indicated that Guqin Qian arrived in Los Angeles, California, on January 8, 2015, as a Temporary Visitor for Pleasure (B2). Guqin Qian provided CBP with an address in Los Angeles, California, where she would purportedly be staying, which is a different address than the one she had provided to the State Department when applying for the visa.  The two different addresses in Los Angeles that Guqin Qian provided to the CBP and the State Department were also different than the address where

30

she was observed and identified in Rancho Cucamonga, California (SUBJECT PREMISES #9 (Unit #422)).

42.   I reviewed the DS-160 nonimmigrant visa application for Guoqing He and discovered the following:

a.   On September 10, 2014, Guoqing He applied for a visa to visit the United States;

b.   On that application, Guoqing He indicated that the purpose of his trip to the United States was "Business/Tourism (B1/B2)";

c.   Guoqing He indicated that his intended date of arrival was November 10, 2014, and that he intended to stay in the United States for 20 days at 10132 Norwalk Blvd, Santa Fe Springs, California 90670 (the "Gorlitz Sewer and Drain, Inc.");

d.   Guoqing He listed his employment as the General Manager for Zhejing Aoer Electrical Appliance Co LTD;

e.   U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Guoqing He indicated that Guoqing He arrived in Los Angeles, California, on February 16, 2015, as a Temporary Visitor for Business (B1). Guoqing He provided CBP with the Day Creek Complex address as the location where he would purportedly be staying, which is a different address than he provided to the State Department.

43.   I reviewed the DS-160 nonimmigrant visa application for Jie He and discovered the following:

a.   On October 8, 2014, Jie He applied for a visa to travel to the United States;

31

     b.   On that application, Jie He indicated that the purpose of her trip to the United States was "Tourism/Medical Treatment (B2)";

     c.   Jie He indicated that her intended date of arrival was December 20, 2014, and that she intended to stay in the United States for 20 days at 5711 West Century Blvd., Los Angeles, California 90045 (which is the Hilton Los Angeles Airport).

     d.   Jie He listed her employment as the Accountant for Zhejing Aoer Electrical Appliance Co LTD.

     e.   I reviewed the consular "memo" from Jie He's visa interview at the American Embassy in Shanghai and learned that the officer concluded that Jie He was "going for leisure" to the United States.

     f.   U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Jie He indicated that Jie He arrived in Las Vegas, Nevada, on November 12, 2014, as a Temporary Visitor for Pleasure (B2). Jie He provided CBP with an address in Las Vegas, Nevada, where she would purportedly be staying, which is a different address than the Los Angeles address that she had provided the State Department when applying for the visa. Both of those addresses differ from the location in Rancho Cucamonga, California, where she was observed on February 23, 2015 (SUBJECT PREMISES #9 (Unit #422)).

5.   **February 23, 2015: SBFD follows up on fire hazard complaints at the Victoria Arbor Complex.**

44.   On February 23, 2015, beginning at 1:45 p.m., SBFD Officer Adams, SBSD Deputy Sousa, HSI GS Owen, and I continued with the fire hazard checks, and knocked on apartments at 7922 Day Creek Blvd, Rancho Cucamonga, California 91739 (the Victoria Arbors Complex).

45.   At approximately 1:45 p.m., SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of apartment 6214 at the Victoria Arbors Complex (SUBJECT PREMISES #8 (Unit #6214)), which was opened by an Asian woman later identified Jianxia Yu, who provided Chinese passport number XXXXX1761 with a date of birth of XX/XX/1959. Due to her limited English-speaking ability, SBSO Deputy Sousa referred her to HSI GS Owen, who is fluent in Mandarin.  GS Owen interpreted for SBFD Officer Adams who stated that he was there to clear up a complaint concerning cooking on the balcony.  Jianxia Yu spoke to GS Owen, who was outside the apartment with me.  Jianxia Yu stated that she lives in the apartment with a man and his wife, who she said were home at the time.

46.   At approximately 1:55 p.m., SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of apartment 4214 of the Victoria Arbors Complex (SUBJECT PREMISES #7 (Unit #4214)), which was opened by an Asian woman later identified as Wei Chen, who provided Chinese passport number XXXXX4108, with a date of birth of XX/XX/1983. SBFD Officer Adams and SBSD Deputy Sousa

33

spoke with Wei Chen and stated that they were there to clear up a complaint. Upon entering, Officer Adams and Deputy Sousa saw two other Asian females in the living room. Deputy Sousa requested identification and Wei Chen provided the above passport. The two other females declined to provide identification. I noticed that Wei Chen appeared to be pregnant because her stomach was distended.

47. I reviewed the DS-160 nonimmigrant visa applications and Form I-94 arrival records for the above-identified individuals, and discovered the following, which showed that they matched the pattern for LIU and DONG's immigration fraud scheme involving pregnant Chinese nationals:

    a.   <u>Jianxia Yu</u>:

        i.   On June 5, 2014, Jianxia Yu applied for a visa to travel to the United States.

        ii.  On that application, Jianxia Yu indicated that the purpose of her trip to the United States was "Business/Tourism (B1/B2)";

        iii. Jianxia Yu indicated that she intended to stay in the United States for 8 days at 7272 East Gage Avenue, Los Angeles, California 90040 (the "Ramada Commerce").

        iv.  Jianxia Yu listed herself as recently retired, giving an ending date of employment of June 4, 2014.

        v.   Jianxia Yu listed that her recent employment was as a clerk for the "Ningxia Bureau of Human Development Services."

vi.   U.S. Department of Justice Immigration
and Naturalization Service Form I-94, Arrival Record, for
Jianxia Yu indicated that she arrived in Los Angeles,
California, on November 10, 2014, as a Temporary Visitor for
Pleasure (B2).  Jianxia Yu provided CBP with an address in San
Diego, California, where she would purportedly be staying, which
is a different address than she provided the State Department,
which had been an address in Los Angeles.  Both of those
addresses differ from the location at which she was observed and
identified on February 23, 2015 (SUBJECT PREMISES #8 (Unit
#6214)).

    b.   <u>Wei Chen</u>:

        i.   On September 11, 2014, Wei Chen applied
for a visa to travel to the United States.

        ii.   On that application, Wei Chen indicated
that the purpose of her trip to the United States was
"Business/Tourism (B1/B2)";

        iii.  Wei Chen indicated that she intended to
stay in the United States for 8 days at 222 W. Houston Avenue,
Fullerton, California 92832 (the Howard Johnson Fullerton –
LAX).

        iv.   Wei Chen listed her employment as a
general manager assistant for Shanghai Everbright International
Travel Service Co LTD.

        v.   I reviewed the consular "memo" from Wei
Chen's visa interview at the American Embassy in Shanghai and

35

learned that the officer concluded that Wei Chen was "going for leisure" to the United States.

     vi. U.S. Department of Justice Immigration and Naturalization Service Form I-94, Arrival Record, for Wei Chen indicated that she arrived in Honolulu, Hawaii, on January 18, 2015, as a Temporary Visitor for Pleasure (B2).  Wei Chen provided CBP with an address in Honolulu, Hawaii, where she would purportedly be staying, which is different than the Los Angeles, California, address that she had provided to the State Department when applying for her visa.  Both of those addresses differ from the location where she was observed and identified on February 23, 2015 (SUBJECT PREMISES #8 (Unit #6214)).

**G.** **February 2015: continued surveillance of LIU confirms that LIU operates his immigration fraud business out of his house (SUBJECT PREMISES #10).**

  48. On February 11, 2015, HSI agents, IRS SA Marquez, and I conducted surveillance of LIU to identify additional apartments and individuals connected to LIU and DONG's USA HAPPY BABY business.  Based upon that surveillance, I know the following:

    a. At approximately 10:00 a.m., IRS SA Marquez observed LIU's vehicle, a black Chevrolet bearing California license plate 6RMP684, leaving a parking lot of the Victoria Arbors Complex. LIU was driving the vehicle and had an unidentified male Asian passenger with him. I saw the vehicle make a stop at Costco for fuel and then continued to the Reserves Apartment Complex (where SUBJECT PREMISES #1 to SUBJECT

36

PREMISES #6 are located).  LIU parked the vehicle at the Reserves Apartment Complex, and the passenger and LUI opened the trunk, removed a couple of boxes and then walked into an apartment in building eight there.

b.  At approximately 11:30 a.m., LIU returned to the vehicle, drove south through the Reserves Apartment Complex parking lot, stopping in front of building seven, and opened the trunk.  The vehicle remained there for a while, and at approximately 11:45 a.m., LIU departed the complex driving the vehicle. LIU drove to his residence at 12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, CA (SUBJECT PREMISES #10) and parked.

49.  On February 20, 2015, HSI GS Salacup, HSI SAs Dominguez and Shelton, IRS Special Agent Marquez, and I conducted surveillance on LIU's residence in Rancho Cucamonga, California  (SUBJECT PREMISES #10).

a.  At approximately 7:50 a.m., HSI GS Salacup observed LIU leave SUBJECT PREMISES #10 on foot. LIU was carrying a bag and was wearing white pants, a blue and white striped t-shirt, and a blue button shirt, which was open. LIU then walked to the Victoria Gardens shopping mall parking structure, located between Cultural Center Drive and N. Main Street on the east side of Monet Avenue, where he got into his car, a black Chevrolet bearing California License plate XXXX684. LIU then left the area followed by HSI-RV GS Salacup, HSI SA Shelton, Dominguez, and I.

b.   LIU then drove his vehicle back to SUBJECT
PREMISES #10, where SA Marquez observed LIU park in front of
SUBJECT PREMISES #10, exit the vehicle, and enter SUBJECT
PREMISES #10 with what appeared to be documents.  After
remaining in the SUBJECT PREMISES #10 for one or two minutes,
LIU then walked out of SUBJECT PREMISES #10 with what appeared
to be different documents than those he had initially taken
inside SUBJECT PREMISES #10.

c.   IRS SA Marquez informed me that a female that
appeared to be LIU's wife DONG was outside the front door of
SUBJECT PREMISES #10 when LIU had gone inside with documents and
come out of SUBJECT PREMISES #10 with different documents before
driving off.

d.   IRS SA Marquez informed me that earlier that day,
he had observed LIU's black Chevrolet bearing California License
plate XXXX684 parking inside a parking structure at the Victoria
Gardens shopping center, which is located across the street from
SUBJECT PREMISES #10.  IRS SA Marquez told me that he observed
documents inside LIU's vehicle, including documents written in
Chinese and documents with what appeared to be telephone
numbers.

e.   Then, LIU re-entered his car and drove to the
Reserves Apartment Complex (within which SUBJECT PREMISES #1 to
SUBJECT PREMISES #6 are located). I saw LIU enter the complex
through the Milliken Entrance, make the first right, first left

38

and stop his vehicle behind building four in front of the fourth garage door, which was opening as he stopped. LIU then took several bags from the trunk of his vehicle and placed them in the garage that belonged to one of the apartment units at the Reserves Apartment Complex. LIU then got into his car as the garage door closed, backed up and stopped at the southwest corner of building four. LIU then left the Reserves Apartment Complex through the north gate onto 5th Street. Agents followed LIU to a nearby apartment complex named "Homecoming at Terra Vista," where he stopped a couple of times, but agents were unable determine at which addresses he had stopped. LIU was then followed to the Day Creek Complex where he stopped and unloaded a couple of bags at the south end of building 300. LIU then drove to the Victoria Arbors Complex (where SUBJECT PREMISES #7 (Unit #4214) and SUBJECT PREMISES #8 (Unit #422) are located), where the agents were unable to determine the apartment numbers of the locations where he stopped.

Agents then followed LIU back to SUBJECT PREMISES #10, where he currently resides.

H.    **Southern California Gas Company Records**

1.    **LIU's subscriber information with Southern California Gas lists LIU as the CEO of USA HAPPY BABY and his mailing address as SUBJECT PREMISES #10.**

50.    IRS SA Marquez informed me that he reviewed Southern California Gas Company's records for SUBJECT PREMISES #1 to SUBJECT PREMISES #10, which were provided pursuant to a federal grand jury subpoena. Based upon that review, IRS SA Marquez told me that the Southern California Gas Company application for service and current billing for the SUBJECT PREMISES #1 (Unit #1220) is registered to USA HAPPY BABY, INC., with Employer Identification Number (EIN) 45-XXXXX93, telephone number (626) 376-9066, and email usahappybaby@hotmail.com. Further, the application for service lists LIU with mailing address 12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, California 91739, which is SUBJECT PREMISES #10. In the Southern California Gas Company documents, LIU is also listed as the President of USA HAPPY BABY, INC., as well as its point of contact.

2.    **USA HAPPY BABY, with LIU as the point of contact, is the subscriber for SUBJECT PREMISES #1 and SUBJECT PREMISES #3 through SUBJECT PREMISES #9.**

51.    IRS SA Marquez informed me that based upon his review of the records provided by Southern California Gas Company pursuant to grand jury subpoena, USA HAPPY BABY is the subscriber for SUBJECT PREMISES #1 (Unit #1220), SUBJECT PREMISES #3 (Unit #5216), SUBJECT PREMISES #4 (Unit #6210), SUBJECT PREMISES #5 (Unit #7214), SUBJECT PREMISES #6 (Unit #7316), SUBJECT PREMISES #7 (Unit #4214), SUBJECT PREMISES #8 (Unit #6214), and SUBJECT PREMISES #9 (Unit #422). As discussed

40

above, those records show that LIU is also listed as the
President of USA HAPPY BABY, INC., as well as its point of
contact.

3.   **LIU is listed as the subscriber for SUBJECT PREMISES #2 (Unit # 4301) and SUBJECT PREMISES #10.**

52.   IRS SA Marquez informed me that based upon his review
of the records provided by Southern California Gas Company
pursuant to grand jury subpoena, LIU is the subscriber for
SUBJECT PREMISES #2 (Unit #4301) and SUBJECT PREMISES #10, which
is LIU and DONG's residence.   In addition to his SSN and DOB, on
the application with the Southern California Gas Company, LIU
provided the following information: mailing address of 12367
Hollyhock Drive, Unit 4, Rancho Cucamonga, California 91739
(SUBJECT PREMISES #10); cell telephone number (626) 202-9408;
home telephone number (626) 376-9066; and email account
Michael_liu_tbc@hotmail.com.   The gas service for Unit 4301
(SUBJECT PREMISES #2 (Unit #4301)) was initiated on January 17,
2013.   As discussed below, these two telephone numbers link to
birthing house advertisements on the internet.

4.   **LIU and DONG are listed as subscribers on additional units other than SUBJECT PREMISES #1 to SUBJECT PREMISES #10.**

53.   IRS SA Marquez informed me that in addition to the
SUBJECT PREMISES #1 to SUBJECT PREMISES #10, LIU and DONG are
listed as subscribers for Southern California Gas for
approximately an additional 10 locations.   For one of those
locations serviced by Southern California Gas Company, DONG

41

provided email address phoebe_dong_sbc@hotmail.com and telephone numbers (626) 376-9066 and (626) 872-9956.

## I.   Internet advertisements for birthing houses are linked to LIU's telephone numbers.

54.   In January 2015, IRS SA Marquez obtained leasing application files from an apartment complex in Rancho Cucamonga where LIU and DONG had applied to rent an apartment in February 2014.   In that application, LIU provided several contact telephone numbers, including 626-202-9408 and 626-376-9066. Among other information, DONG provided email address phoebe.dong.xxx@hotmail.com.

55.   IRS SA Marquez told me that during February 2015, he conducted a query of the Internet using one of LIU'S identified telephone phone numbers, 626-202-9408.   Based on those searches, IRS SA Marquez located an Internet advertisement on the website http://55chinese.com/thread-11418-1-1.html, under the heading "Hacienda Heights Apartment Rentals for Short Stays."   The advertisement claims that the apartments are extremely suitable for expectant mothers and their accompanying families.   The apartments will allow the expectant mother to experience the American lifestyle during their stay. It also noted that the apartments are furnished and are located in a dense Chinese area, and the apartments are walking distance from restaurants, banks, drugstores, supermarkets and medical care. The advertisement claims that you must select this apartment complex

if you pay special attention to the quality of life of you and your family during your stay in the United States.

56.    IRS SA Marquez told me that during February 2015, he conducted a query of the Internet using LIU'S telephone number 626-376-9066. SA Marquez located an internet advertisement at https://baaaaaby.wordpress.com/tag/%E6%B0%91%E5%AE%BF/. Under the heading "Birth of a Child to the United States: Let your child from birth have the identity of being a US Citizen," the date of the advertisement appears to be October 8, 2010. The advertisement claims that "Phoebe Baby Homestay" is a Los Angeles birthing center that is a new concept of do it yourself. According to the website, the birthing center will save the client money, clients have the freedom to take the bus or walk to Chinese restaurants, Chinese supermarkets, doctor's appointments, shopping malls, discount stores, cheapest hospitals, among other things. The apartments are two bedrooms and two bathrooms.  To focus on privacy each household will have a room and a bathroom, the living room and kitchen will be shared, noting that unlike other homestays that 4-6 families share a kitchen and bathroom leading to embarrassing situations. We are the safest with community gates and security guards. Easiest language environment since 85 percent of the area speaks Chinese. Expectant mothers will be able go for walks and see doctors at any time. The advertisement notes that rooms are limited, and directs that potential customers call telephone number 1-626-376-9066. As discussed above, that phone number one

of the telephone numbers provided by LIU and USA HAPPY BABY.

**J.   Internet advertisements for birthing houses linked to DONG and email address usahappybaby@hotmail.com.**

57.   IRS SA Marquez told me that he obtained the leasing files from the Day Creek Complex, 7828 Day Creek Blvd., Rancho Cucamonga, California.  In the lease application for SUBJECT PREMISES #9 (Unit #422), LIU listed the contact email address of usahappybaby@hotmail.com.  Included within that file was an email message dated January 11, 2015, from "Corporate Hotmail" with email address usahappybaby@hotmail.com to the Day Creek Complex email address, which email message is signed: "Michael Liu, USA Happy Baby Inc., 626-2029408."  Further, on the "Easy Pay Enrollment Form" for paying the lease, LIU lists the same email address.

58.   IRS SA Marquez informed me that during February 2015, he conducted a query of the Internet and located an Internet advertisement on the website http://phoebe2651.blog.sohu.com.  In this website, DONG provides information why potential clients should chose her birthing center which focuses on providing the best professional service while saving the client money. Further, on the website contact telephone number 626-376-9066 and email address phoebe dong sbc@hotmail.com are listed for DONG.  Telephone number 950-4031-7680 is also provided if the expectant mother wants to call from mainland China.  The website promises to ease the worries and nerves of expectant mothers to come to the United States and have their baby. DONG promises her

44

clients will have an in depth understanding of American society if they chose her birthing house. According to the website counter, more than 17,000 people had viewed this blog. In this same blog, DONG guaranteed that her clients' money would be refunded if the expectant mother gets sent back to China on the same flight in which she arrived in the United States. The blog has many messages from former clients of the birthing houses operated by LIU and DONG. In the messages the clients specifically thank LIU and DONG for their wonderful and successful experience when they traveled from China to have their babies in the United States using USA HAPPY BABY. For example, one former customer wrote: "Dear Michael and Phoebe: we have returned to Taiwan," and another wrote to DONG's email address: "Phoebe, we have peace at home, everything goes well, the baby is very good…"

59. IRS SA Marquez informed me that during February 2015, he queried the internet using usahappybaby@hotmail.com and found an advertisement on http://www.weibo.com, which had a heading of "Birth in the United States" and a photograph of a Chinese baby lying on top of an American flag. The website also had links to videos in which LIU and DONG appear alongside multiple expectant mothers, including Chinese website "tudouui.com." The following are several screen-shots from that video seen by IRS SA Marquez on March 1, 2015:

a.   Seven babies laid next to each other on a couch:



b.   Six pregnant Asian females, showing their stomachs:



c.   A baby with an American passport:



Sunday, March 01, 2015                                              Page 1 of 1

## K.   LIU and DONG operate their immigration fraud scheme in at least nine apartments in Rancho Cucamonga, California.

60.   Based on SA Marquez's review of the Southern California Gas Company records, bank records, State Department visa applications review, and surveillance conducted, I believe that LIU and DONG are continuing to operate the visa fraud birth tourism business at the following subject premises located at the Reserves Apartment Complex, the Victoria Arbors Complex, and the Day Creek Complex:

a.   **SUBJECT PREMISES #1 (Unit #1220)**: According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #1 (Unit #1220). The lease for SUBJECT PREMISES #1 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 20, 2015, HSI SA Korban observed three Asians individuals walking in the shopping

47

area adjacent to the Reserves Apartment Complex. They appeared
to be a family, including a mother in her mid-thirties who
appeared pregnant due to her visibly-distended stomach, an adult
male approximately 30 years old, and a female child,
approximately 4 years old. HSI SA Korban followed them on foot
and observed them enter apartment 1220 (SUBJECT PREMISES #1
(Unit #1220)).

      b.   **SUBJECT PREMISES #2 (Unit #4301)**: According to
Southern California Gas Company, LIU is the current subscriber
of SUBJECT PREMISES #2 (Unit #4301). The lease for SUBJECT
PREMISES #2 is under USA HAPPY BABY, and LIU signed the lease on
behalf of USA HAPPY BABY.  On February 10, 2015, SBSD Deputy
Sousa observed the driver Haun Wang from the traffic stop on
that date, and identified Chinese foreign nationals Yuan Liu, Bo
Zhou, and Feng Che at the Reserves Apartment Complex number 4301
(SUBJECT PREMISES #2 (Unit #4301). Two of those females appeared
to be pregnant.  As described in detail above, each of the visas
had false statements that match the USA HAPPY BABY immigration
fraud scheme.

      c.   **SUBJECT PREMISES #3 (Unit #5216)**:  According to
Southern California Gas Company, USA HAPPY BABY is the current
subscriber of SUBJECT PREMISES #3 (Unit #5216). The lease for
SUBJECT PREMISES #3 is under USA HAPPY BABY, and LIU signed the
lease on behalf of USA HAPPY BABY. On February 20, 2015, HSI SA
Korban observed an approximately 30-year-old Asian female, who
appeared pregnant due to her visibly-distended stomach, walk out

48

of building five wearing white flannel pajamas, approach an older Asian female, have a brief conversation with her, and then return to building 5 where she was observed entering SUBJECT PREMISES #3 (Unit #5216).

   d.   **SUBJECT PREMISES #4 (Unit #6210)**: According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #4 (Unit #6210). The lease for SUBJECT PREMISES #4 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 9, 2015, IRS SA Benson observed an Asian woman wearing pajamas walking from the direction of building seven towards building six, when near building six, an unknown Caucasian male asked her if she was having a boy or a girl, but her response could not heard.  The woman appeared to be pregnant and near full term.  She continued into building six, up one flight of stairs to SUBJECT PREMISES #4 (Unit #6210), produced a key, unlocked the door, quickly entered, and relocked the door behind her.

   e.   **SUBJECT PREMISES #5 (Unit #7214)**: According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #5 (Unit #7214). The lease for SUBJECT PREMISES #5 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 9, 2015, IRS SA Benson observed an Asian male and a pregnant Asian female exiting a white Toyota van with dark tinted windows. They stood by the pool and were joined by another Asian man and another pregnant Asian woman.  It appeared that they were waiting for a

49

ride because they often looked towards the north and south gates while facing the curb. The woman and man were then observed going up the southeast stairs to the second floor of building seven, where they turned right immediately off the stairs and entered apartment 7214, which is SUBJECT PREMISES #5 (Unit #7214).

f. **SUBJECT PREMISES #6 (Unit #7316):** According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #6 (Unit #7316). The lease for SUBJECT PREMISES #6 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 9, 2015, IRS SA Benson observed a pregnant Asian woman shaking a rug over the third floor balcony on the southeast corner of building seven. According to the Reserves Apartment Complex site plan, this apartment is number 7316 (SUBJECT PREMISES #6 (Unit #7316)).

g. **SUBJECT PREMISES #7 (Unit #4214):** According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #7 (Unit #4214). The lease for SUBJECT PREMISES #7 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 23, 2015, SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of apartment 4214 (SUBJECT PREMISES #7 (Unit #4214)), which was opened by an Asian woman later identified as Wei Chen, who provided Chinese passport number XXXXX4108, with a date of birth of XX/XX/1983. Wei Chen appeared to be pregnant as her stomach was distended. As described in detail above, Wei Chen's visa

50

application had false statements that match the USA HAPPY BABY immigration fraud scheme.   IRS SA Marquez also informed me that he reviewed records subpoenaed from San Antonio Community Hospital, which confirmed that a child named D. Sun, with mother Yu Gu, was born on December 11, 2014, and provided SUBJECT PREMISES #7 as the address.

   h. **SUBJECT PREMISES #8 (Unit #6214)**: According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #8 (Unit #6214). The lease for SUBJECT PREMISES #8 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY. On February 23, 2015, SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of apartment 6214 (SUBJECT PREMISES #8 (Unit #6214)), which was opened by an Asian woman later identified Jianxia Yu who provided Chinese passport number XXXXX1761 with a date of birth of XX/XX/1959. As described in detail above, Jianxia Yu's visa application had false statements that match USA HAPPY BABY's immigration fraud scheme.

   i. **SUBJECT PREMISES #9 (Unit #422)**: According to Southern California Gas Company, USA HAPPY BABY is the current subscriber of SUBJECT PREMISES #9 (Unit #422). The lease for SUBJECT PREMISES #9 is under USA HAPPY BABY, and LIU signed the lease on behalf of USA HAPPY BABY.  On February 23, 2015, SBFD Officer Adams and SBSD Deputy Sousa knocked on the door of

apartment 422 of the Day Creek Complex (SUBJECT PREMISES #9 (Unit #422)), which was opened by an Asian woman later identified as Guqin Qian. SBSD Deputy Sousa requested identification and Guqin Qian provided Chinese passport number XXXXX6450 with a date of birth of XX/XX/1962. Additional individuals were present in apartment 422 and provided their Chinese passports, including Guoquin He and Jie He. As described in detail above, Guoquin He and Jie He's visa applications had false statements that match the USA HAPPY BABY immigration fraud scheme.

L.   **LIU operates his immigration fraud scheme out of his residence in Rancho Cucamonga, California (SUBJECT PREMISES #10).**

61.   According to Southern California Gas Company, LIU is the current subscriber of SUBJECT PREMISES #10. Citi Cards records show that since March 2014, LIU has used SUBJECT PREMISES #10's as his mailing and home address for his credit cards ending in 6732, 7336, 9872. DONG's Bank of America account ending in 0831 currently lists SUBJECT PREMISES #10 as her mailing and home address. LIU and DONG's 2013 tax return listed SUBJECT PREMISES #10 as their address.

62.   Documents provided by the Reserves Apartment Complex, the Day Creek Apartment Complex, and the Victoria Arbors Complex list SUBJECT PREMISES #10 as a mailing address for LIU and DONG, for the rental applications and/or billing for SUBJECT PREMISES

#1 (Unit #1220), SUBJECT PREMISES #2 (Unit #4301), SUBJECT
PREMISES #3 (Unit #5216), SUBJECT PREMISES #4 (Unit #6210),
SUBJECT PREMISES #5 (Unit #7214); SUBJECT PREMISES #6 (Unit
#7316), SUBJECT PREMISES #7 (Unit #4214), SUBJECT PREMISES #8
(Unit #6214), and SUBJECT PREMISES #9 (Unit #422)).

63.  As discussed above, on multiple occasions during
February 2015, agents observed LIU drive from SUBJECT PREMISES
#10 to the other SUBJECT PREMISES where pregnant Chinese
nationals were staying, and bring documents to and from SUBJECT
PREMISES #10 for that business.  Specifically, on February 10,
2015, agents observed LIU leave SUBJECT PREMISES #10 on foot,
enter his vehicle parked across the street, drive to SUBJECT
PREMISES #10, exit his vehicle, and enter SUBJECT PREMISES #10
carrying what appeared to be documents.  After remaining in the
SUBJECT PREMISES #10 for one or two minutes, LIU then exited
SUBJECT PREMISES #10 with what appeared to be a different set of
documents than those he had initially taken inside SUBJECT
PREMISES #10, and drive to the Reserves Apartment Complex, where
SUBJECT PREMISES #1 to SUBJECT PREMISES #6 are located.  Last, a
vehicle registered to USA HAPPY BABY has the address of the
SUBJECT PREMISES #10 and observed it exit the garage at SUBJECT
PREMISES #10.

M.   **DONG's bank records**

64.  IRS SA Marquez informed me that he reviewed DONG's
Bank of America account ending in 0831, and it listed 12367
Hollyhock Drive, Unit 4, Rancho Cucamonga, California, 91739

(SUBJECT PREMISES #10) as the mailing address beginning in January 2014.

65.   IRS SA Marquez also informed me that he discovered that during 2014, DONG had deposits of approximately $173,000 to that one account, and in January 2015, DONG had deposits of approximately $38,000. On October 25, 2014 DONG made a check payable in the amount of $70,806 to USA HAPPY BABY, INC.  Also, DONG received multiple checks from Jek-Kway Shen, M.D., that had in the memo line "referral" or similar terms, which totaled $1,100.  DONG also received similar referral fees from another doctor. IRS SA Marquez told me that those same two doctors are listed in internet advertisements and blogs for the USA HAPPY BABY business.

**N.   LIU and DONG's personal tax returns failed to report hundreds of thousands of dollars in income.**

66.   IRS SA Marquez informed me that LIU and DONG filed joint federal income tax returns, Forms 1040, for the 2011, 2012, and 2013 tax years. LIU and DONG reported total income on their 2011 federal income tax return, Form 1040, of $46,111. LIU and DONG reported total income on their 2012 federal income tax return, Form 1040, of $53,516. LIU and DONG reported total income on their 2013 federal income tax return, Form 1040, of $38,963.  The address of 12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, California, 91739 (SUBJECT PREMISES #10) is listed as LIU and DONG's mailing address on their 2013 personal federal income tax return, Form 1040.

67.  IRS SA Marquez told me that during that same time period, 2011 to 2013, LIU and DONG made some large purchases under their names that exceed the income reported on their tax returns.

a.  IRS SA Marquez informed me that on August 8, 2013, LIU purchased residential condominium located at 12367 Hollyhock Drive, Unit #4, Rancho Cucamonga, CA 91739 (SUBJECT PREMISES #10) for $370,000, which he purchased by paying the total without any loan.

b.  IRS SA Marquez also informed me that on December 31, 2013, LIU purchased residential condominium located at 7694 Lisbon Place, Unit #3, Rancho Cucamonga, California 91739 for $330,000, for which $165,000 was paid, and with the remainder as a loan.

68.  IRS SA Marquez informed me that On February 13, 2014, in a lease application for an apartment in a separate apartment building in Rancho Cucamonga, LIU provided bank statements and listed on the application was that LIU had monthly gross receipts of $213,968.79 and an annual income of $1,283,812.74. These monthly and yearly income figures for LIU do not reflect the income that LIU and DONG reported on their personal federal income tax returns, Form 1040, that they filed for the years 2011, 2012 and 2013.

69.  Based on the foregoing, it appears that LIU and DONG failed to report a considerable amount of income on their joint federal income tax returns for tax years 2011, 2012, and 2013.

**O.   USA HAPPY BABY INC.'s corporate tax returns appear to report unreasonable losses that make the company facially appear to have no taxable income.**

70.   IRS SA Marquez informed me that USA HAPPY BABY filed corporate federal income tax returns, Form 1120, for the 2012 and 2013 tax years, on which LIU was listed as the CEO of USA HAPPY BABY. USA HAPPY BABY reported total income on its 2012 corporate federal income tax return, Form 1120, of $238,896, total expenses and deductions of $304,192, resulting in a taxable income of negative $65,296. USA HAPPY BABY reported total income on its 2013 corporate federal income tax return, Form 1120, of $747,703, total expenses and deductions of $722,974, which resulted in a taxable income of only $24,729. The large expenses and deductions appear inflated because they negate all or the majority of the income reported on each corporate return.

71.   Based on the foregoing, IRS SA Marquez believes that LIU failed to accurately report the income, expenses, and deductions on USA HAPPY BABY's 2012 and 2013 corporate federal income tax returns, Forms 1120.

**P.   LIU failed to report foreign bank accounts to the IRS.**

72.   IRS SA Marquez informed me that based upon his review of the bank records for LIU and DONG, LIU has foreign bank accounts that he failed to report to the IRS, in violation of the FBAR reporting requirements in Title 31, United States Code:

a.   On December 06, 2013, LIU received an international wire transfer of $29,462 from a Bank of China

56

account into his domestic Chase Bank account ending in 9958. The originator of the wire transfer from that foreign bank account was "Zhang Nengbin."

   b.   On December 11, 2013, LIU received an international wire transfer of $50,000 from a Bank of China account into his domestic Chase Bank account ending in 9958. The originator of the wire transfer from that foreign bank account was "Li Zhijun."

   c.   On December 26, 2013, LIU received an international wire transfer of $50,000 from a Bank of China account into his Chase Bank account ending in 9958.  The originator of the wire transfer from that foreign bank account was "Zhou Wei."

   d.   On January 21, 2014, LIU received an international wire transfer of $50,000 from a Bank of China bank account into his Chase Bank account ending in 9958.  The originator of the wire transfer from that foreign bank account was "Lu Xiaojin."

   e.   I know from discussions with IRS SA Marquez that individuals often use nominees to hide their ownership of bank accounts in foreign countries.

   f.   LIU and DONG did not report any foreign bank accounts to the IRS for tax years 2011, 2012 and 2013.

Q.   <u>Use of cash to further fraudulent activities</u>

   73.   Based on my training, experience, and previous financial fraud investigations, I know that individuals engaged

57

in white collar crimes, such as immigration and tax fraud, will often work with cash and keep large amounts of cash on hand because cash helps maintain their anonymity. Fraudsters often attempt to avoid leaving a paper trail, via checks or credit cards, and will instead make cash deposit and withdrawals.

## IV.   CONCLUSION

74.   For all the reasons described above, there is probable cause that beginning in or around 2012:

a.   LIU and DONG have engaged in an immigration fraud scheme by·harboring pregnant Chinese foreign nationals ·in the United States who entered for the sole purpose of giving birth in the United States to obtain U.S. citizenship and misrepresented the true intention of their visit to the United States;

b.   LIU and DONG have failed to accurately report to the IRS thousands of dollars of income that they made from operating their immigration fraud scheme; and

c.   LIU has failed to report foreign bank accounts to the IRS.

75.   For all the reasons described above, there is probable cause that evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A); Title 18, United States Code, Sections 371 and 1546; Title 26, United States Code, Sections 7201, 7203, and 7206; and Title 31, United States Code, Sections 5314 and 5322(a), which criminalize, respectively, bringing in

and harboring aliens; conspiracy, fraud and misuse of visas, permits, and other documents; tax evasion and false tax return; and willful failure to file report of foreign bank and financial accounts (FBAR), as described above and in Attachment B of this affidavit, will be found in searches of SUBJECT PREMISES #1 to SUBJECT PREMISES #9, as further described above and in Attachments A-1 to A-9 of this affidavit.

76.   For all the reasons described above, there is probable cause that evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A); Title 18, United States Code, Sections 371 and 1546; Title 26, United States Code, Sections 7201, 7203, and 7206; and Title 31, United States Code, Sections 5314 and 5322(a), which criminalize, respectively, bringing in and harboring aliens; conspiracy, fraud, and misuse of visas, permits, and other documents; tax evasion and false tax return; and willful failure to file report of foreign bank and financial

//

//

accounts (FBAR), as described above and in Attachment C of this affidavit, will be found in a search of SUBJECT PREMISES #10, as further described above and in Attachment A-10 of this affidavit.

/s/

_____

Eric Blair
Special Agent
Homeland Security Investigations

Subscribed to and sworn before
me this __2__ day of March 2015.

Jay C. Gandhi

_____ Jay C. Gandhi

HONORABLE ~~DOUGLAS F. MCCORMICK~~
UNITED STATES MAGISTRATE JUDGE

60

## ATTACHMENT A-1

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #1, limited to unit 1220, located at 11210
4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES
#1").  SUBJECT PREMISES #1 is an apartment unit within "the
Reserves Apartment Complex."  SUBJECT PREMISES #1 is located on
the southwest section of the complex and is on the second floor
in Building 1.  SUBJECT PREMISES #1's front door is light brown
in color.  An address plaque with number "1220" hangs at eye
level immediately to the right of the door of SUBJECT PREMISES
#1.  The number "1220" is clearly painted in dark brown with an
off white color background.  The exterior of the complex is tan
in color.

**ATTACHMENT A-2**

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #2, limited to unit 4301, located at 11210

4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES

#2"). SUBJECT PREMISES #2 is an apartment unit within the

"Reserves Apartment Complex." SUBJECT PREMISES #2 is located on

the northeast section of the complex and is on the third floor

in Building 4. SUBJECT PREMISES #2's front door is light brown

in color. An address plaque with number "4301" hangs at eye

level immediately to the right of the door of SUBJECT PREMISES

#2. The numbers "4301" is clearly painted in dark brown with an

off white color background. The exterior of the complex is tan

in color.

## ATTACHMENT A-3

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #3, limited to unit 5216, located at 11210 4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES #3"). SUBJECT PREMISES #3 is an apartment unit within the "Reserves Apartment Complex." SUBJECT PREMISES #3 is located on the southeast section of the complex and is on the second floor in Building 5. SUBJECT PREMISES #3's front door is light brown in color. An address plaque with number "5216" hangs at eye level immediately to the right of the door of SUBJECT PREMISES #3. The numbers "5216" is clearly painted in dark brown with an off.white color background. The exterior of the complex is tan in color.

## ATTACHMENT A-4

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #4, limited to unit 6210, located at 11210 4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES #4"). SUBJECT PREMISES #4 is an apartment unit within the "Reserves Apartment Complex." SUBJECT PREMISES #4 is located on the northwest section of the complex and is on the second floor in Building 6. SUBJECT PREMISES #4's front door is light brown in color. An address plaque with number "6210" hangs at eye level immediately to the right of the door of SUBJECT PREMISES #4. The numbers "6210" is clearly painted in dark brown with an off white color background. The exterior of the complex is tan in color.

## ATTACHMENT A-5

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #5, limited to unit 7214, located at 11210 4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES #5"). SUBJECT PREMISES #5 is an apartment unit within the "Reserves Apartment Complex." SUBJECT PREMISES #5 is located on the northwest section of the complex and is on the second floor in Building 7. SUBJECT PREMISES #5's front door is light brown in color. An address plaque with number "7214" hangs at eye level immediately to the right of the door of SUBJECT PREMISES #5. The numbers "7214" is clearly painted in dark brown with an off white color background. The exterior of the complex is tan in color.

## ATTACHMENT A-6

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #6, limited to unit 7316, located at 11210 4th St., Rancho Cucamonga, California 91730 ("SUBJECT PREMISES #6"). SUBJECT PREMISES #6 is an apartment unit within the "Reserves Apartment Complex." SUBJECT PREMISES #6 is located on the northwest section of the complex and is on the third floor in Building 7. SUBJECT PREMISES #6's front door is light brown in color. An address plaque with number "7316" hangs at eye level immediately to the right of the door of SUBJECT PREMISES #6. The numbers "7316" is clearly painted in dark brown with an off white color background. The exterior of the complex is tan in color.

## ATTACHMENT A-7

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #7, limited to unit 4214, located at 7922
Day Creek Blvd, Rancho Cucamonga, California 91739 ("SUBJECT
PREMISES #7"). SUBJECT PREMISES #7 is an apartment unit within
"the Victoria Arbors Apartment Complex." SUBJECT PREMISES #7 is
located on the northwest section of the complex and is on the
second floor in Building 4. SUBJECT PREMISES #7's front door is
bluish green in color. An address plaque with numbers "4214"
hangs at eye level immediately to the left of the door of
SUBJECT PREMISES #7. The numbers "4214" is clearly painted in
white with a dark brown color background. The exterior of the
complex is tan in color.

## ATTACHMENT A-8

PREMISES TO BE SEARCHED

The SUBJECT PREMISES #8, limited to unit 6214, located at 7922 Day Creek Blvd, Rancho Cucamonga, California 91739 ("SUBJECT PREMISES #8"). SUBJECT PREMISES #8 is an apartment unit within "the Victoria Arbors Apartment Complex." SUBJECT PREMISES #8 is located on the southwest section of the complex and is on the second floor in Building 6. SUBJECT PREMISES #8's front door is bluish green in color. An address plaque with numbers "6214" hangs at eye level immediately to the left of the door of SUBJECT PREMISES #8. The numbers "6214" is clearly painted in white with a dark brown color background. The exterior of the complex is tan in color.

## ATTACHMENT A-9

<u>PREMISES TO BE SEARCHED</u>

The SUBJECT PREMISES #9, limited to unit 422, located at 7828 Day Creek Blvd, Rancho Cucamonga, California 91739 ("SUBJECT PREMISES #9"). SUBJECT PREMISES #9 is an apartment unit within the "Day Creek Apartment Complex." SUBJECT PREMISES #9 is located on the northwest section of the complex and is on the second floor in Building 4. SUBJECT PREMISES #9's front door is dark green in color. An address plaque with numbers "422" hangs at eye level immediately to the right of the door of SUBJECT PREMISES #9. The numbers "422" are clearly painted in dark brown with an off white color background. The exterior of the complex is tan in color.

## ATTACHMENT A-10

<u>PREMISES TO BE SEARCHED</u>

The SUBJECT PREMISES #10, limited to unit 4, located at 12367 Hollyhock Drive, Rancho Cucamonga, California 91739 ("SUBJECT PREMISES #10"). SUBJECT PREMISES #10 is a condominium unit within building 12367 Hollyhock Drive, Rancho Cucamonga, California 91739. SUBJECT PREMISES #10 is located on the southeast section of the 12367 Hollyhock Drive, Rancho Cucamonga, California 91739 condominium building and is on the first floor. SUBJECT PREMISES #10's front door is dark blue in color. Number "4" hangs at eye level on the door of SUBJECT PREMISES #10. The number "4" is clearly painted in black in color and clearly visible. The exterior of Unit 4 is tan in color on the north side and brown on the south side that faces Gatsby Drive.

## ATTACHMENT B

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 8, United States Code, Section 1324(a)(1)(A); Title 18, United States Code, Sections 371 and 1546; Title 26, United States Code, Sections 7201 and 7206; and Title 31, United States Code, Sections 5314 and 5322(a), which criminalize, respectively: bringing in and harboring aliens; conspiracy and fraud and misuse of visas, permits, and other documents; tax evasion and false tax return; and willful failure to file report of foreign bank and financial accounts ("FBAR"), namely:

a.   Records, deeds, lease agreements, registration, utility bills, and any other documentation showing ownership or control of SUBJECT PREMISES #1-9, limited to 15 items per SUBJECT PREMISES;

b.   Client travel records, passports, visas, and documents regarding any immigration matters, including contracts, documents regarding fees charged, records of payment, notes, social security cards, hospital records, and California birth certificates;

c.   Client/customer records including: contracts, cash pay receipts, notes, checks, and wire transfers;

d.   Correspondence with LIU, DONG, and USA HAPPY BABY INC.; and

e.   Financial records reflecting payment to LIU, DONG, and USA HAPPY BABY INC., from clients/customers of LIU, DONG, and USA HAPPY BABY INC.

2.   All documents written in Chinese that cannot be reviewed on-site.  Within 60 days of the date that the search warrant is executed, special agents who can read Chinese or other qualified individuals shall review the seized Chinese documents to determine whether they fall within the scope of the search terms, and if they do not, the documents shall be promptly returned.

## ATTACHMENT C

## I.    ITEMS TO BE SEIZED

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 8, United States Code, Section 1324(a)(1)(A); Title 18, United States Code, Sections 371 and 1546; Title 26, United States Code, Sections 7201 and 7206; and Title 31, United States Code, Sections 5314 and 5322(a), which criminalize, respectively: bringing in and harboring aliens; conspiracy and fraud and misuse of visas, permits, and other documents; tax evasion and false tax return; and willful failure to file report of foreign bank and financial accounts ("FBAR"), namely:

a.    Records, deeds, lease agreements, registration, utility bills, and any other documentation showing ownership or control of SUBJECT PREMISES #10, limited to 15 items;

b.    Records and documents identifying clients of LIU, DONG, and USA HAPPY BABY INC., such as client lists, appointment books, calendars, telephone logs, contracts, correspondence, checks and other forms of payment;

c.    Client case files, records, and documents regarding any immigration matters, including information identifying clients, contracts, documents regarding fees charged, records of payment, notes, correspondence, status reports, travel records, passports, social security card, hospital record, and California birth certificates.

d.    Records identifying all employees, agents, accomplices, or other associates of LIU, DONG, and USA HAPPY

BABY INC., including employee personnel records, records of personal corporations, business cards, payment records;

      e.   Records pertaining to business activities or financial transactions conducted by LIU, DONG, and USA HAPPY BABY INC., or any persons associated therewith, including bank correspondence, account statements, travel expenses, deposit receipts, records of wire transfers, checks, drafts, safety deposit box records, money orders, check ledgers, certificates of deposit, checkbooks, financial statements, cash receipts, tax records;

      f.   Originals and/or copies of completed state and Federal income tax returns (Forms 1040, 1040A, 1040EZ, and 1040X), together with all forms, schedules, and attachments thereof, specifically, Forms W-2 (Wage and Tax Statement); Forms 1099 (Non-Employee Compensation Statements); Forms W-4; (Employees Withholding Certificate); Schedule A (Itemized Deductions); Schedule B (Interest and Dividend Income); Schedule C (Profit or Loss From Business); Schedule D (Capital Gains and Losses); Schedule E (Supplemental Income and Loss); Forms 2441 (Child and Dependent Care Expenses); Forms EIC (Earned Income Credit); Forms 4797 (Sales of Business Property statements); Forms 4853 (U.S. Individual Income Tax Declarations for Electronic Filing); worksheets and/or supporting documentation used in the preparation of LIU, DONG, and USA HAPPY BABY INC.'s tax returns; invoices, receipts or other records relating to the 2013 tax year; and

      g.   Cash in excess of $1,000.

h.   All documents that appear to be written in Chinese that the searching agents believe may be within the scope of items to be seized.

2.   Because it is possible that none of the searching agents will have the ability to read Chinese, these documents will be reviewed by a Chinese interpreter as soon as practicable and if these documents are outside of the scope of the items to be seized, they will be returned within 60 days.